**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEY WENDELL JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN SEIFRIED, Assistant Commissioner of the Division of Developmental Disabilities, in his official capacity,<br><br>Defendant. | Civil Action No. 20-17410 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court on Defendant Jonathan Seifried's Motion to Dismiss Plaintiff's Consolidated and Second Amended Complaint ("Consolidated Complaint") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). (ECF No. 324.) Plaintiff Joey Wendell Jackson opposed (ECF No. 336), and Defendant replied (ECF No. 341). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED** and Plaintiff's claims are **DISMISSED** without prejudice.

## I. BACKGROUND

This case involves a dispute over the type and quality of services an individual with disabilities is entitled to under the New Jersey Community Care Program.

Plaintiff is a disabled adult who requires extensive, around-the-clock medical and supportive oversight due to the severity of his intellectual and physical disabilities. (ECF No. 295 ¶¶ 12, 21.)   Since at least November 2012, Plaintiff has been enrolled in the New Jersey Community Care Program, which is administered by the New Jersey Department of Human Services, Division of Developmental Disabilities ("DDD"). (*Id.* ¶¶ 15-17.) The Community Care Program operates under a Medicaid waiver. (*Id.* ¶¶ 2, 50.) The State of New Jersey collects partial reimbursement from the federal Medicaid program for the cost of providing medical, housing, and community-based services to individuals like Plaintiff, who would require institutionalization without these services. (*Id.* ¶¶ 17-18.[1]) To maintain its eligibility for the waiver, the State must comply with Title XIX of the Social Security Act ("Medicaid Act") and with the regulations promulgated by the Secretary of Health and Human Services. *See* 42 U.S.C. § 1396n; 42 C.F.R. §§ 441.300, *et seq*.

Under the Community Care Program, Plaintiff receives medical, homecare, and community-based services from the providers approved by the DDD. (*Id.* ¶ 20.) For example, Plaintiff has a specific car assigned for his use and requires assistance with taking his medication several times a day. (*Id.* ¶¶ 21, 31.) The DDD also assigns support coordinators to Plaintiff to ensure that he has access to the necessary services and programs. (*Id.* ¶¶ 19, 27.)

---

[1]   *See also* 42 U.S.C. § 1396n(c)(1):

> [A] State plan approved under this title . . . may include as 'medical assistance' . . . payment for part or all of the cost of home or community-based services . . . which are provided pursuant to a written plan of care to individuals with respect to whom there has been a determination that but for the provision of such services the individuals would require the level of care provided in a hospital or a nursing facility . . . .

On November 30, 2020, Plaintiff filed this action *pro se* against Defendant Jonathan Seifried in his official capacity as the Assistant Commissioner of the DDD.   (ECF No. 1.) Plaintiff's Complaint was accompanied by his Application to proceed *In Forma Pauperis* (ECF No. 1-3) and a Motion for Appointment of Counsel (ECF No. 4).   The Court allowed Plaintiff to proceed without the payment of fees and appointed *pro bono* counsel for him.   (ECF Nos. 85, 93.) On August 2, 2021, Plaintiff by way of an Amended Complaint, asserted claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2(c), which purportedly arose from Defendant's failure to provide adequate services to Plaintiff in violation of the requirements under § 1396n of the Medicaid Act.   (ECF No. 113 ¶¶ 15-20, 43-44.)   Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6).   (ECF No. 139.)

Following the consolidation of this action and Plaintiff's parallel action,[2] Plaintiff filed  the four-count Consolidated Complaint, which combined the two original claims with the allegations from the parallel complaint.   (ECF No. 295.)   In Count One, Plaintiff reiterates his § 1983 claim stemming from Defendant's alleged violation of § 1396n(c)(2)(A) of the Medicaid Act, which creates an enforceable "individual right to receive services." (*Id.* ¶¶ 51, 57.)   Plaintiff asserts that Defendant failed to take the "necessary safeguards" to protect Plaintiff's health and welfare by refusing to replace a fee-for-service model with a contract model and provide Plaintiff with a DDD case manager instead of a support coordinator. (*Id.* ¶¶ 9, 49-50.)   Plaintiff alleges that his support coordinators threaten to deprive him of the necessary supports and do not assist him in obtaining "all available services set forth in his Service Plan." (*Id.* ¶¶ 27-28, 30.)   Plaintiff further alleges

---

[2]    On August 18, 2022, Plaintiff filed a parallel complaint against the same Defendant. (*See Jackson v. Seifried*, Civ. No. 22-5106 (GC) (LHG), ECF No. 1.)   On September 22, 2022, the Court consolidated both actions with the consent of the parties. (ECF No. 254.)

3

that the DDD emergency hotline staff does not return Plaintiff's calls or write up incident reports of mistreatment by his support coordinators.  (*Id.* ¶ 32.)  Plaintiff also alleges that some members of the staff appointed to work with Plaintiff harass him and lack adequate training to deal with his various medical and mental health needs.  (*Id.* ¶¶ 34-39.)  Plaintiff further claims that after the DDD replaced the contract model with the fee-for-service model, he can no longer obtain personal hygiene items and go on vacations.  (*Id.* ¶¶ 42, 44.)  Plaintiff also contends that the budget does not factor in his desire to attend church services, and that he does not receive adequate training to cook meals and obtain employment.  (*Id.* ¶¶ 40-41.)  Similarly, in Count Two Plaintiff argues that, in the aggregate, Defendant's aforementioned actions and omissions amount to an actionable violation of the NJCRA.  (*Id.* ¶ 59.)

In Count Three, Plaintiff alleges that Defendant excluded or threatened to exclude Plaintiff from the benefits of the DDD's services, programs, and activities because of Plaintiff's disability in violation of Title II of the Americans with Disabilities Act ("ADA").  (*Id.* ¶¶ 60-67.)  Finally, in Count Four, Plaintiff asserts that Defendant breached the Consent Order issued by the Court on October 25, 2019, at the conclusion of Plaintiff's previous litigation against the DDD.[3]  (*Id.* ¶¶ 68-70; ECF No. 295-1.)  In the Consent Order, the DDD agreed to provide Plaintiff with "all available services set forth in this Service Plan, which currently includes 24/7 supports."  (ECF No. 295-1 at 3.[4])  Plaintiff argues that Defendant violated the Consent Order by threatening to reduce or by actually reducing Plaintiff's access to support services.  (ECF No. 295 ¶¶ 69-70.)

---

[3]   This is not the first action initiated by Plaintiff against the DDD.  On January 6, 2017, Plaintiff filed a separate and unrelated complaint against the DDD.  (*See Jackson v. Varanyak et al.*, Civ. No. 17-118 (MAS) (LHG), ECF No. 1.)  At the conclusion of that action, the parties entered into a voluntary agreement by signing a joint Consent Order.  (*Id.*, ECF No. 474.)

[4]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Defendant again moved to dismiss the Consolidated Complaint in its entirety. (ECF No. 324.)

## II.   <u>LEGAL STANDARD</u>

On a Rule 12(b)(6) motion for failure to state a claim, "a court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

A district court evaluating a motion to dismiss asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions[.]'"). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 570)).

## III.   <u>DISCUSSION</u>

Defendant asserts five reasons for dismissing Plaintiff's Consolidated Complaint. First, Plaintiff has no private cause of action under § 1983 based on the alleged violation of 42 U.S.C. § 1396n(c)(2) and even if he did, Defendant is not a "person" amenable to suit under the civil rights statutes. (ECF No. 324-1 at 17-19, 23-26.) Second, Plaintiff failed to state a claim under Section 1983 or Title II of the ADA. (*Id.* at 26-31.) Third, Defendant enjoys sovereign immunity under the Eleventh Amendment in all claims for monetary damages and in Plaintiff's NJCRA claim. (*Id.* at 14-17.) Fourth, the DDD did not violate the Consent Order. (*Id.* at 31-33.) Finally, Defendant

urges the Court to abstain from adjudicating this action on the basis of the doctrine of primary jurisdiction. (*Id.* at 19-22.)

## A. Primary Jurisdiction Doctrine

As a threshold matter, Defendant argues that the Court should abstain from adjudicating this action pursuant to primary jurisdiction doctrine. (*Id.*) The primary jurisdiction doctrine is "concerned with promoting the proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956). "The doctrine operates on the principle that, 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.'" *Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 310 (D.N.J. 2010) (citing *MCI Comm'ns Corp. v. Am. Telephone & Telegraph Co.*, 496 F.2d 214, 220 (3d Cir.1974)). In deciding whether to apply this doctrine, Courts have applied the following factors:

> (1) [w]hether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.
>
> [*See, e.g.*, *Global Naps v. Bell Atlantic–New Jersey*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003).]

Here, the Court declines to apply the primary jurisdiction doctrine. Plaintiff's claims under § 1983, the NJCRA, the ADA, and the relevant Consent Order do not involve a discretionary decision before the DDD. *Interfaith*, 702 F. Supp. 2d at 312 ("The DEP's general discretion with regard to environmental matters in this state does not circumscribe citizen suits authorized by Congress.") Although the DDD has discretionary decision-making in some instances, Defendant

fails to cite any case law suggesting that the DDD has discretionary decision-making power under § 1983, the NJCRA, the ADA, or the applicable Consent Order. *See, e.g.*, *Heightened Indep. and Progress v. Port Auth. of New York and New Jersey*, Civ. No. 07-2982, 2008 WL 5427891, *5 (D.N.J. Dec. 30, 2008) (rejecting applying the primary jurisdiction doctrine as Congress had not granted the Federal Transit Administration discretion to interpret the Americans with Disabilities Act). Therefore, the Court will not abstain from hearing this case under the primary jurisdiction doctrine.

### B.  § 1983 Claim  (Count One)

#### 1.  *Enforceable Right Under § 1983*

Defendant contends that § 1396n(c)(2) of the Medicaid Act does not create a private cause of action enforceable under § 1983. (ECF No. 324-1 at 23.)  The Court disagrees.

To state a § 1983 claim, a plaintiff must sufficiently plead "two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993)).  "Rather than conferring any substantive rights, section 1983 'provides a method for vindicating federal rights elsewhere conferred.'" *Steinhardt v. Bernardsville Police Dep't*, Civ. No. 20-2825, 2021 WL 3929321, at *3 (3d Cir. Sept. 2, 2021) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)).

The Court previously held that § 1396n(c)(2)(A) of the Medicaid Act "confers individual rights enforceable under Section 1983." *See Jackson v. Dep't of Hum. Servs. Div. of Developmental Disabilities*, Civ. No. 17-118, 2019 WL 669804, at *3 (D.N.J. Feb. 19, 2019) (Shipp, J.) (citing *Wood v. Tompkins*, 33 F.3d 600, 610-12 (6th Cir. 1994)); *see also Cohen v.*

*Chester Cnty. Dep't of Mental Health/Intell. Disabilities Servs.*, Civ. No. 15-5285, 2016 WL 3031719, at *8 (E.D. Pa. May 25, 2016) ("Courts have found an implied private right of action to enforce § 1396n(c)(2)(A)."); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 455 (6th Cir. 2020) (finding that Plaintiffs have a private right of action under § 1396n(c)(2)(A)).

The relevant provision of the Medicaid Act states that:

> A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary that . . . [the] necessary safeguards (including adequate standards for provider participation) have been taken to protect the health and welfare of individuals provided services under the waiver . . . .

> [42 U.S.C. § 1396n(c)(2)(A).]

In *Blessing v. Freestone*, the Supreme Court set forth the three-prong test for determining whether a particular statutory provision gives rise to a federal right: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States." 520 U.S. 329, 340-41 (1997) (internal quotations and citations omitted).

The United States Court of Appeals for the Sixth Circuit applied the *Blessing* test to the statutory provision at issue before this Court – § 1396n(c)(2)(A) – in *Waskul*, 979 F.3d at 455. Considering the first prong, the Sixth Circuit reasoned that the Medicaid provision expressly identified the "individual rights to be protected – namely, individuals' health and welfare." *Id.* at 454 (internal quotations and citations omitted). As for the second prong, the Sixth Circuit noted that the Medicaid provision and regulations laid out in 42 C.F.R. § 441.302 "carefully detail the specific assurances to be provided regarding safeguards for health and welfare." *Id.* (internal punctuation and citations omitted). Therefore, the asserted rights are not so "'vague and

8

amorphous' that [their] enforcement would strain judicial competence." *Id.* (quoting *Blessing*, 520 U.S. at 340-41).   Applying the third prong, the Sixth Circuit emphasized that the provision "impose[d] 'a binding obligation on the States' by using 'mandatory, rather than precatory,' language." *Id.* (quoting *Blessing*, 520 U.S. at 341).  Finally, the Sixth Circuit noted that "Congress has not foreclosed the remedy under [Section] 1983" for the Medicaid provision at issue here.  *Id.* The Court is persuaded by the Sixth Circuit's reasoning in *Waskul*.  *Id.*; *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S. Ct. 1444, 1460 (2023) (finding a private right of action under several provisions of the Medicaid Act, which comprise the Federal Nursing Home Reform Act).

As such, the Court adopts this reasoning, and finds that there is a private right of action under § 1396n(c)(2)(A) of the Medicaid Act.

### 2.  *Section 1983 Claims Against State Officials*[5]

Defendant also urges the Court to dismiss Plaintiff's § 1983 claim because Defendant, who is sued in his official capacity, is not "considered a 'person' amenable to suit under § 1983." (ECF No. 324-1 at 18.)  However, Defendant's argument fails.  Plaintiff correctly points out that the state officials, when sued in their official capacity for injunctive relief, would be considered "persons" under § 1983.  (ECF No. 336 at 17); *see, e.g.*, *Day v. New Jersey Dep't of Corr.*, Civ. No. 21-09986, 2022 WL 170855, at *6 n.6 (D.N.J. Jan. 19, 2022) ("[A] state official sued in her official capacity for injunctive relief is a 'person' subject to suit under § 1983 'because "official-capacity actions for prospective relief are not treated as actions against the State."' (citing *Will v.*

---

[5]     Defendant argues that all claims for monetary relief under § 1983 and the NJCRA are barred by the Eleventh Amendment immunity, and therefore the Court does not have subject-matter jurisdiction over those claims. (ECF No. 324-1 at 12, 14-16.)  However, Plaintiff concedes that he is not pursuing monetary claims under § 1983 or the NJCRA. (ECF No. 336 at 10.)

*Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989))); *see also Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (noting that a state official may be sued in their official capacity for prospective, injunctive relief).  In sum, Plaintiff may bring a § 1983 claim for prospective, injunctive relief against Defendant in his official capacity.

### 3.  *Merit of Plaintiff's § 1983 Claim*

Next, the Court considers the merits of Plaintiff's § 1983 claim premised on Defendant's violation of the relevant Medicaid Act provision.  Defendant argues that Plaintiff has failed to state a viable civil rights claim because Plaintiff merely identifies a "laundry list of preferred services," rather than alleging that he does not receive the necessary medical and community-based services, as required by the statute.  (ECF No. 324-1 at 28, 30-31.)  Defendant also emphasizes that despite Plaintiff's allegations of "amorphous risk of losing certain services," he never alleges that his current services were rescinded.  (*Id.* at 29.)

Because there is little case law specifically construing § 1396n(c)(2)(A), *Cohen*, 2016 WL 3031719, at *8, the Court relies on the Sixth Circuit's approach from *Waskul*.  In *Waskul*, the Sixth Circuit suggested that when construing what "necessary safeguards" the States must take "to protect the health and welfare" of the beneficiaries of home and community-based services under the Medicaid waiver programs, the courts should look to the federal regulations laid out in 42 C.F.R. §§ 441.300, *et seq*.  979 F.3d at 454-55.  The Supreme Court has unambiguously endorsed this approach as well.  *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999) ("[T]he well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." (citations omitted)).

The federal regulation interpreting § 1396n(c)(2)(A) of the Medicaid Act requires that the home and community-based settings be provided according to specifications set forth in 42 C.F.R. § 441.301(c)(4).   *Waskul*, 979 F.3d at 455 (citing 42 C.F.R. § 441.302(a)(5)).   Section 441.301(c)(4) outlines that the home and community-based programs must: (1) provide "opportunities to seek employment and work in competitive integrated settings, engage in community life, [and] control personal resources," *id.* § 441.301(c)(4)(i); (2) "[e]nsure[] an individual's rights of privacy . . . and freedom from coercion and restraint," *id.* § 441.301(c)(4)(iii); (3) "[o]ptimize[] . . . individual initiative, autonomy, and independence in making life choices," *id.* § 441.301(c)(4)(iv); and (4) "[f]acilitate[] individual choice regarding services and supports, and who provides them," *id.* § 441.301(c)(4)(v).   Additionally, the home and community-based services must factor in the "needs of the [beneficiaries] as indicated in their person-centered service plan." *Id.* § 441.301(c)(4).

However, the Court's analysis does not end here.   In accordance with the substantial body of § 1983 case law, the Court finds that allegations of *de minimis* infringements and inconveniences in receiving home and community-based services will not pass muster under Rule 12(b)(6).

With regard to the § 1983 claims premised on violations of constitutional and federal rights, courts generally pronounce "*de minimis* rules" by outlining a threshold of trivial violations or misconducts which cannot give rise to a cognizable claim.  *See, e.g.*, *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997), *rev'd on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (finding that the *de minimis* rule serves "the interest of [the] federal system by distinguishing claims which are cognizable under the Constitution" to prevent "unwarranted assumption of federal judicial authority to scrutinize the minutiae of state detention activities"); *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (holding that "[t]he Eighth Amendment's prohibition of

11

cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force" (citations omitted)); *Wilkins*, 559 U.S. at 39 (affirming that the courts had to inquire into the "nature of the force – specifically, whether it was *nontrivial*" (emphasis added) (citation omitted)); *Fisher v. City of Las Cruces*, 584 F.3d 888, 899-900 (10th Cir. 2009) (requiring a showing of "an actual, non-de minimis physical, emotional, or dignitary injury" to sufficiently allege a constitutional violation in a handcuffing case).

Other courts have set forth comparable standards in reviewing a variety of similar Medicaid claims. *See, e.g.*, *State of Ark. ex rel. Yamauchi v. Sullivan*, 969 F.2d 622, 626 (8th Cir. 1992) (prohibiting penalization of the state for a *de minimis* noncompliance with the annual Medicaid program requirements to review patients receiving long-term care in institutional settings); *see also Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 500, 502 (7th Cir. 2022), *rev'd on other grounds sub nom. Eagleson v. St. Anthony Hosp.*, Civ. No. 22-534, 2023 WL 4065381 (U.S. June 20, 2023) (finding that a health care provider has a § 1983-enforceable right under § 1396u-2(f) of the Medicaid Act to address the State's *systemic* failures to provide timely and transparent Medicaid payments); *Nored ex rel. Nored v. Tennessee Dep't of Intell. & Developmental Disabilities*, Civ. No. 21-5826, 2022 WL 4115962, at *9-10 (6th Cir. Sept. 9, 2022), *cert. denied sub nom. Nored v. Tennessee Dep't of Intell. & Developmental Disabilities*, 143 S. Ct. 780 (2023) (concluding that the defendants did not violate § 1396a(a)(8) of the Medicaid Act by failing to furnish support and community-based services to the plaintiff when a willing, qualified provider could not be found due to the plaintiff's non-medical preferences as to location, gender, and race of the provider).

This analytical approach is further reinforced by the important policy concerns that underly it. Just as the *Riley* Court could not endorse the unwarranted assumption of federal judicial

authority in regulating "the minutiae of state detention activities," *Riley*, 115 F.3d at 1167, the Court cannot endorse unfettered judicial management of the minutiae of the State's activities in implementing and operating its community care programs. *See also* Medicaid Program; Home and Community-Based Services, 46 Fed. Reg. 48532-33 (supplementary info. Oct. 1, 1981) (clarifying that the purpose of the promulgated Medicaid regulations was to "give the States the maximum opportunity for innovation in furnishing noninstitutional services to beneficiaries, with a minimum of Federal regulation"). In dealing with administrative agencies, courts typically show "a proper respect for administrative autonomy," in order to allow agencies "to function more efficiently and responsibly." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 620 (3d Cir. 1989); *see also Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1190 (D.V.I. 1990) (finding that administrative autonomy was an important policy concern).

The Court's conclusions are consistent with the Sixth Circuit's decision in *Waskul*. Indeed, the *Waskul* plaintiffs alleged that a change in the budgeting methodology resulted in substantial underfunding of the necessary services, limited the plaintiffs' access to the greater community, and deprived them of meaningful choices among providers. *Waskul*, 979 F.3d at 456. A blanket reduction in funding of the beneficiaries' services qualifies as more than a *de minimis* infringement of or deviation from the relevant regulations.

After reviewing Plaintiff's claims in the Consolidated Complaint, the Court cannot reasonably infer that Plaintiff experienced more than *de minimis* infringements on his individual autonomy and inconveniences in receiving his services. For example, Plaintiff states conclusory allegations that he does not receive adequate services of a speech therapist, cooking lessons, and employment training. (ECF No. 295 ¶ 40.) Even assuming that Plaintiff is entitled to these

services, he does not allege or attempt to explain how the services, which have been provided to him, fall short of an adequate standard.   Similarly, Plaintiff claims that the staff is inadequately trained to deal with his medical needs (*Id.* ¶¶ 36-37) but fails to provide specific factual allegations regarding the staff's training and education.   Plaintiff's threadbare allegations of routine harassment by the staff also fail to satisfy the federal pleading standard under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 677-80; *Twombly*, 550 U.S. at 555-58.   Plaintiff recounts the details of one incident involving a staff member who spoke rudely to him and pushed him, but he acknowledges that the staff member was relocated.   (ECF No. 295 ¶ 35.)   In the absence of sufficient "factual enhancement," Plaintiff's "naked assertions" are not entitled to the assumption of truth necessary to plausibly plead a claim.   *Iqbal*, 556 U.S. at 678 (citations omitted).

Plaintiff's other claims do not fare any better.   It is clear from the well-pleaded facts of the Consolidated Complaint that Plaintiff has had contentious relationships with some of his support coordinators.   (*See, e.g.*, ECF No. 295 ¶ 30 (a support coordinator "indicated that [Plaintiff] is at risk of losing 24-hour services" included in his Service Plan).)   For instance, Plaintiff requests a DDD case manager.   (*Id.* ¶ 9.)   However, Plaintiff does not allege that his Service Plan permits the assignment of a DDD case manager.   Nor does he claim that his conflicts with support coordinators jeopardized his integration into the community, curtailed his autonomy, or resulted in a violation of his rights to privacy.   *See* 42 C.F.R. § 441.301(c)(4).   Plaintiff does not contend that his access to the necessary services was *in fact* revoked despite his allegations of threats to take away the supports and the assigned car.   (ECF No. 295 ¶¶ 30-31.)   Plaintiff does not list any specific services from his Service Plan that he could not obtain due to ineffective assistance of his support coordinator.   (*Id.* ¶ 27.)   Plaintiff also admits that he was able to switch support coordinators in spite of his assertions that the DDD does not write up incident reports or return his calls.   (*Id.* ¶¶

32-33, 64.) Construing these allegations in the light most favorable to Plaintiff, the Court cannot infer that a DDD case manager would facilitate Plaintiff's integration into the community or provide Plaintiff with the necessary services which he is not receiving otherwise.

Plaintiff does assert that he can no longer go on vacation after switching to a fee-for-service model. (*Id.* ¶ 44.) Plaintiff also alleges that he lacks access to the washer and dryer and cannot obtain the necessary personal hygiene supplies. (*Id.* ¶¶ 42-43.) However, Plaintiff fails to provide sufficient details as to the severity of his hygiene concerns. Without more, these inconveniences amount to *de minimis* infringements on Plaintiff's autonomy or privacy. *See Nored*, 2022 WL 4115962 at *9 (finding no violation of a Medicaid Act provision for failure to provide services to plaintiff due to his non-negotiable preferences for a more convenient location). Lastly, the Court is not an appropriate authority to decide whether Plaintiff's budget should be adjusted to include attendance of church services or additional medical procedures, such as CAT scans, which do not appear to have been prescribed to him by a medical professional or included in his Service Plan. (ECF No. 295 ¶ 45.)

Accepting all well-pleaded facts as true, as it must at this stage, the Court is unable to infer "more than the mere possibility of [Defendant's] misconduct." *Iqbal*, 556 U.S. at 679. Considering these deficiencies in Plaintiff's pleadings, the Court dismisses Count One of the Consolidated Complaint without prejudice. Plaintiff shall be granted leave to file another amended complaint to attempt to cure the deficiencies.

### C. New Jersey Civil Rights Act Claim (Count Two)

Next, the Court turns to Plaintiff's claims under the NJCRA, N.J. Stat. Ann. § 10:6-2(c). Plaintiff concedes in his opposition papers that his NJCRA claims may be dismissed without

prejudice.  (ECF No. 336 at 17 n.3.)  Pursuant to Plaintiff's concession, Count Two is dismissed without prejudice.

It is well-settled that "[s]tate officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity." *Balsam v. Sec'y of New Jersey*, 607 F. App'x 177, 183 (3d Cir. 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).  "[T]he supplemental jurisdiction statute, 28 U.S.C. § 1367, does not authorize district courts to exercise jurisdiction over claims against non-consenting States." *Balsam*, 607 F. App'x at 183 (citing *Raygor v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 541-42 (2002)).  Here, Defendant did not waive sovereign immunity.  (ECF No. 324-1 at 14-15.)  Consequently, the Court lacks subject matter jurisdiction over Plaintiff's NJCRA claim, which is hereby dismissed without prejudice. *See In re Hechinger Inv. Co. of Delaware, Inc.*, 335 F.3d 243, 249 (3d Cir. 2003) ("[W]here a defendant successfully demonstrates that the Eleventh Amendment precludes a suit, the court in which the plaintiff filed the action lacks subject matter jurisdiction over that action."); *see also Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580 (3d Cir. 2007) ("Where a district court lacks subject-matter jurisdiction, its disposition of such a case will be without prejudice." (citations and ellipses omitted)).

### D.  The ADA Claim (Count Three)

Next, the Court addresses Plaintiff's claims under Title II of the ADA.  "To state a claim under Title II of the ADA, [a plaintiff] must establish that: '(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 950 (3d Cir. 2019)

16

(quoting *Haberle v. Troxell*, 885 F.3d 171, 178 (3d Cir. 2018)).  "To satisfy . . . causation [under the ADA], [p]laintiffs must prove that they were treated differently based on . . . their disability." *Kokinda*, 779 F. App'x at 950 (quoting *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013)).

In the context of discrimination against the individuals with developmental and mental disabilities, "Congress explicitly identified unjustified segregation" and institutionalization of such persons as a form of discrimination. *Olmstead*, 527 U.S. at 600 (citations omitted).  However, the *Olmstead* plurality cautioned that "[t]he State's responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless." *Id.* at 603.  In *Frederick L. v. Dep't of Pub. Welfare of Pennsylvania*, the Third Circuit recognized that the States do not have unlimited resources, but they have an obligation "[t]o maintain a range of facilities . . . and . . . to administer services with an even hand."  364 F.3d 487, 493-94 (3d Cir. 2004) (citing *Olmstead*, 527 U.S. at 597).

Here, Defendant does not contest that Plaintiff is a "qualified individual with a disability." Instead, Defendant attacks Plaintiff's claims on the grounds that he was not excluded from the necessary services or programs (ECF No. 324-1 at 16) and that Plaintiff did not explicitly allege that the purported denial of benefits had occurred because of his disability (ECF No. 341 at 12-13).  The Court agrees.

Plaintiff's sole claim is that he frequently changed his support coordinators and had "difficult relationships" with the assigned staff due to his disability.  (ECF No. 295 ¶ 64.)  Then he asserts that he was purportedly excluded and threatened with exclusion from Defendant's services in retaliation for the behavioral manifestations of his disability. (*Id.* ¶¶ 64, 66.)  However, these legal conclusions are not entitled to the assumption of truth.  *See Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

First, Plaintiff does not plead any facts that would allow a reasonable inference that he was "excluded from participation in or denied the benefits of" Defendant's services or programs. Instead, Plaintiff merely asserts that a support coordinator "indicated that he [was] at risk of losing 24-hour services" (ECF No. 295 ¶ 30) and that he can no longer take vacations or obtain personal hygiene items under the fee-for-service model (*Id.* ¶¶ 42, 44). Neither of these allegations indicate that Plaintiff has been denied the benefits of Defendant's services. Plaintiff never lost his 24-hour support services. It is also unclear whether Plaintiff is simply receiving different – but comparable – benefits after he switched to the fee-for-service model. *See Olmstead*, 527 U.S. at 603 n.14 (noting that Title II of the ADA does not require States to "provide a certain level of benefits to individuals with disabilities").

Even assuming, *arguendo*, that Plaintiff was excluded from Defendant's programs or services when he could no longer take vacations and obtain personal hygiene items, the Court is unable to draw a connection between this purported exclusion and Plaintiff's disability. Plaintiff does not claim that he received threats to deprive him of opportunities to take vacations in retaliation for behavioral manifestations of his disability. On the contrary, Plaintiff explains that he can no longer take vacations because he now uses a fee-for-service model but fails to clarify why the change had occurred. (ECF No. 295 ¶ 44.) Plaintiff does not claim that he is being treated differently than other similarly situated individuals who switched to the fee-for-service model. *See Kokinda*, 779 F. App'x at 947, 950 (finding that a plaintiff with disabilities did not plausibly plead the causation element of his Title II ADA claim premised on the allegations that an officer at a correctional institution was sexually grooming the disabled plaintiff and the staff obstructed

inquiries into the officer's conduct); *see also Perry v. 38th Jud. Dist.*, Civ. No. 22-2704, 2022 WL 2805332, at *4 (E.D. Pa. July 18, 2022) (dismissing plaintiff's Title II ADA claim for failure to allege any specific facts illustrating that the court prevented him from participating in his criminal court proceedings due to his disabilities when he chose not to speak in court on the advice of his counsel).

Finding that Plaintiff failed to state a claim under Title II of the ADA, the Court does not need to decide whether the State has waived sovereign immunity with respect to Plaintiff's request for monetary damages.   Accordingly, the Court dismisses Count Three of the Consolidated Complaint without prejudice.

### E.  Violation of the Consent Order (Count Four)

Finally, Defendant argues that Plaintiff does not state a plausible claim for breach of the Consent Order because "Defendant has not *actually* reduced any services for Plaintiff."  (ECF No. 324-1 at 31.)  The Court agrees.

"Because a district court has jurisdiction to determine whether one of its orders has been violated, it may adjudicate whether an agreement incorporated into a court order has been breached." *In re Avandia Mktg., Sales Pracs. and Prods. Liab. Litig.*, 617 F. App'x 136, 142 (3d Cir. 2015) (citation omitted).  "In enforcing a consent order, the Court must adhere strictly to its terms." *Isovolta AG v. Dielectric Sols., LLC*, Civ. No. 11-910, 2011 WL 5509362, at *2 (W.D. Pa. Nov. 10, 2011); *see also Gov't Emps. Ret. Sys. of Virgin Islands v. Gov't of Virgin Islands*, 995 F.3d 66, 79 (3d Cir. 2021) ("[A] court should not 'strain the [consent] decree's precise terms or impose other terms in an attempt to reconcile the decree with [the court's] own conception of its purpose.'" (quoting *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir. 1998))).  In more precise terms, "the scope of a consent decree must be discerned within its four corners, and not by

reference to what might satisfy the purposes of one of the parties to it." *Fox v. U.S. Dep't of Hous. & Urb. Dev.*, 680 F.2d 315, 319 (3d Cir. 1982) (citing *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)).

Here, the Consent Order provides that "DDD is committed to providing [Plaintiff] with all available services set forth in his Service Plan . . . . [Plaintiff's] Service Plan will not be changed arbitrarily, but only through and in accordance with all established guidelines and protocols." (ECF No. 295-1 at 3.)  Plaintiff alleges that Defendant violated the terms of the Consent Order by threatening to reduce Plaintiff's in-person support services or by actually reducing the support services.  (ECF No. 295 ¶ 70.)  However, Plaintiff does not refer to his Service Plan in connection with any of his claims.  To give an example, Plaintiff does not list any specific support services from his Service Plan that are no longer provided to him.  Nor does Plaintiff assert that Defendant arbitrarily changed his Service Plan.  And although Plaintiff claims that he received threats to take away his support services, the language of the Consent Order unambiguously indicates that a breach will occur only when Plaintiff's access to the agreed-upon services, such as 24-hour supports, is *in fact* reduced or revoked.  (ECF No. 295-1 at 3 ("DDD is committed to providing [Plaintiff] with all available services set forth in his Service Plan, which currently includes 24/7 supports.").)

Accordingly, the Court dismisses Count Four of the Consolidated Complaint without prejudice.

IV.    **CONCLUSION**

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 324) is **GRANTED**.  Counts One through Four of Plaintiff's Consolidated Complaint are **DISMISSED** without prejudice.  An appropriate Order follows.

Dated: July ___19___, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE