<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEY WENDELL JACKSON,<br><br>             Plaintiffs,<br><br>      v.<br><br>JONATHON    SEIFRIED,    Assistant<br>Commissioner of the New Jersey Department<br>of Human Services, in his official capacity,<br><br>             Defendant. | Civil Action No. 20-17410 (GC) (JBD)<br>Civil Action No. 22-05106 (GC) (JBD)<br><br>**OPINION** |

<u>**CASTNER, District Judge**</u>

This matter comes before the Court upon motion of Defendant Jonathan Seifried, the assistant commissioner of the Division of Developmental Disabilities (DDD) within the New Jersey Department of Human Services, to dismiss Plaintiff Joey Wendell Jackson's Second Consolidated Complaint under Federal Rules of Civil Procedure (Rules) 12(b)(1) and 12(b)(6). (ECF Nos. 437, 445.)  Jackson opposed, and Seifried replied.  (ECF Nos. 463, 472.)  The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Seifried's motion is **DENIED**.

## I.      **BACKGROUND**

For a detailed recitation of the factual background and past amendments to the complaints, see the Court's previous opinion at ECF No. 430 or *Jackson v. Seifried*, Civ. No. 20-17410, 2023 WL 4627815 (D.N.J. July 19, 2023).

Jackson's last complaint asserted claims for substantive and procedural due process violations of Title XIX of the Social Security Act (Medicaid Act), 42 U.S.C. § 1396n(c)(2)(A)), through 42 U.S.C. § 1983; violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; and breach of a consent order entered as part of the parties' resolution of a previous action.  (ECF No. 295.)[1]  Jackson sought monetary damages and equitable relief.  (*Id.* at 11.[2])

The Court granted Seifried's motion to dismiss that complaint.  *See Jackson*, 2023 WL 4627815, at *10.  In so ruling, the Court found that Medicaid Act § 1396n(c)(2)(A) afforded Jackson a private right of action; and Jackson could bring a § 1983 claim for prospective, injunctive relief against Seifried in his official capacity; but Jackson's allegations of de minimis infringements and inconveniences in receiving home and community-based services could not give rise to a Medicaid Act claim.  *Id.* at *4-7.  For his Title II claim, Jackson did not allege facts supporting the third and fourth elements necessary to state such claim—that he was deprived services, programs, or activities because of his disability.  *Id.* at *8-9.  As for his Consent Order claim, Jackson could not state a plausible claim without demonstrating that Seifried had actually reduced services for Jackson.  *Id.* at *10.  The Court gave Jackson an opportunity to amend his complaint to cure these deficiencies.  (ECF No. 431.)

Jackson timely amended.  The Second Consolidated Complaint reasserts claims for due process violations of the Medicaid Act, through § 1983 (Count One); violations of Title II (Count Two); and breach of the Consent Order (Count Three).  (ECF No. 437.)  Jackson seeks monetary

---

[1]    Jackson also asserted a claim for violations of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2(c), though he later agreed that claim may be dismissed.  (ECF No. 336 at 17 n.3.)

[2]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

damages for his Title II claim and equitable relief for his Medicaid Act and Consent Order claims. (ECF No. 463 at 15.)  Seifried's motion to dismiss followed.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

Rule 12(b)(1) encompasses dismissals for "lack of jurisdiction due to Eleventh Amendment immunity." *Nemeth v. Office of the Clerk of the N.J. Superior Court*, Civ. No. 19-16809, 2020 WL 2537754, at *2 (D.N.J. May 19, 2020).  State sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015).  Once a challenge to jurisdiction is raised under Rule 12(b)(1), the plaintiff bears the burden to demonstrate the existence of subject-matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

### B.   Rule 12(b)(6)—Failure to State a Claim Upon Which Relief Can Be Granted

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported

3

only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.   <u>DISCUSSION</u>

### A.   **Section 1983 & Medicaid Act Claim (Count One)**

Seifried argues that Jackson's § 1983 claim still alleges only de minimis infringements, which cannot support his Medicaid Act claim; does not articulate how certain services fall short of an adequate standard; and does not establish an actual reduction in services.  (ECF No. 445-1 at 21-22.)

Section 1983 claims have two essential elements: (1) "the conduct complained of was committed by a person acting under color of state law," and (2) "the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted).  "Rather than conferring any substantive rights, section 1983 'provides a method for vindicating federal rights elsewhere conferred.'" *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Jackson asserts federal rights under the Medicaid Act and relevant federal regulations.[3]  According to the regulations interpreting Medicaid Act § 1396n(c)(2)(A), "[h]ome and

---

[3]   For a discussion on the Medicaid Act's implied provision of a private cause of action enforceable under § 1983, see *Jackson*, 2023 WL 4627815, at *3-5.

community-based programs"—such as Jackson's—"must have . . . the following qualities . . . based on the needs of the individual as indicated in their person-centered service plan":

(1) "include[s] opportunities to seek employment and work in competitive integrated settings, engage in community life, [and] control personal resources";

(2) "[e]nsures an individual's rights of privacy, dignity and respect, and freedom from coercion and restraint";

(3) "[o]ptimizes . . . individual initiative, autonomy, and independence in making life choices"; and

(4) "[f]acilitates individual choice regarding services and supports, and who provides them."

[42 C.F.R. § 441.301(c)(4)(i), (iii), (iv), (v).]

Jackson argues that he alleges more than de minimis violations of these qualities.[4]  The Court disagrees in part and agrees in part.

Starting with ***employment, community life, and personal resources***, Jackson alleges the following:

- "although [Jackson's] ISP indicates that he is to be provided opportunities to sample jobs in the community, his support coordinator" (i) "threatened to reduce his hours of support because Mr. Jackson recently obtained employment at a fast food restaurant," and (ii) "had not equipped him with the skills to stay in the job" (ECF No. 472 at 24 (citing ECF No. 437 ¶¶ 40, 45; Compl. Ex. B));

- "[a]lthough Mr. Jackson's ISP notes his religious 'support needs,' Mr. Jackson is not provided an adequate budget to attend church services, which affects his emotional wellbeing" (ECF No. 437 ¶ 47); and

- "although [Jackson] has a 'low-functioning' girlfriend in Somerset County, New Jersey, he 'does not get to see' her" (ECF No. 472 at 24-25 (citing ECF No. 437 ¶ 50)).

---

[4]     Jackson asks the Court to reconsider its previous finding that to survive a Rule 12(b)(6) motion in the § 1983 context, his Medicaid Act claim must allege more than "de minimis infringements and inconveniences in receiving home and community-based services."  (ECF No. 463 at 27-28.) *Jackson*, 2023 WL 4627815, at *5.  The Court has considered Jackson's arguments on this point and sees no reason to disturb its finding.

As the Court previously ruled, the alleged threat of service reduction cannot support Jackson's Medicaid Act claim.  *See Jackson*, 2023 WL 4627815, at *7 ("Plaintiff does not contend that his access to the necessary services was *in fact* revoked despite his allegations of threats to take away the supports and the assigned car.").  To the extent that Jackson implies that his support coordinator's plan to "[r]eview" Jackson's "supervision needs" given his new employment was designed to discourage him from sampling jobs in the community, the Court cannot draw that inference as "more than [a] mere possibility" based on the present allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Jackson does not allege facts causally connecting his new employment and the review, nor does he show that a review of his "supervision needs" implies a reduction in the necessary services that he will receive.

Next, Jackson's allegation regarding his girlfriend does not cover the first element of a § 1983 claim: identifying the conduct that deprived Jackson of his right to engage in community life by seeing his girlfriend.  (*See* ECF No. 437 ¶ 50 (alleging only that Jackson "does not get to see" his girlfriend).)  So that allegation cannot support his Medicaid Act claim.

Jackson's church-budget allegation, however, survives a motion to dismiss.  Since the Court's previous ruling, which questioned whether "attendance of church services" was included in his ISP,[5] Jackson clarified that his "ISP notes his religious 'support needs,'" yet an inadequate budget prevents him from attending church services, which affects his emotional wellbeing.  (*Compare* ECF No. 295 ¶ 41 (alleging only that "Jackson is not provided an adequate budget to attend church services"), *with* ECF No. 437 ¶ 47 ("Although Mr. Jackson's ISP notes his religious

---

[5]     *See Jackson*, 2023 WL 4627815, at *7 ("[T]he Court is not an appropriate authority to decide whether Plaintiff's budget should be adjusted to include attendance of church services . . . , which do not appear to have been . . . included in his Service Plan." (citing ECF No. 295 ¶ 45).)

'support needs,' Mr. Jackson is not provided an adequate budget to attend church services . . . .").)
The allegation plausibly shows that Jackson is not receiving a service that he is supposed to receive
under his ISP.  The Court finds that allegation, when viewed in the best light for Jackson, clears
the bar at this stage.  *C.f. Gattuso v. New Jersey Dep't of Hum. Servs.*, 881 F. Supp. 2d 639, 649
(D.N.J. 2012) (finding that the plaintiffs' vague allegation that "funding is insufficient to meet
their needs" could not support their Title II claim).

Likewise, as to his job-skills allegation, Jackson made curative amendments since the
Court ruled that even if he is entitled to receive employment-training services,[6] he had "not
allege[d] or attempt[ed] to explain how the services" provided to him "fall short of an adequate
standard."  *Jackson*, 2023 WL 4627815, at *7.  (*Compare* ECF No. 295 ¶ 40 (alleging that
"services of . . . coaching to obtain adequate employment . . . are not being adequately provided
to" Jackson), *with* ECF No. 437 ¶ 45 (alleging that "Jackson requires coaching in order to obtain
and retain adequate employment" but that Jackson's "support coordinator (under the auspices of
DDD) had not equipped [Jackson] with the skills to stay in the job").)  The allegations sufficiently
imply that Jackson is not receiving job-skills services to which he is entitled under his service plan.

Next, for his ***rights of privacy and freedom from coercion and restraint***, Jackson alleges
the following:

- "staff have filed excessive numbers of incident reports about Mr. Jackson that Mr.
  Jackson contends are not factually accurate" (ECF No. 437 ¶ 52);

- "a police report indicates that Mr. Jackson told an officer that in October 2022, a
  staff member of Mr. Jackson's support coordinator told him 'You don't know who
  I am' and pushed him" (*id.* ¶ 55); and

---

[6]    To be sure, at least one court in this Circuit has rejected that a state cannot be liable under
the Medicaid Act for denying "discretionary" services to a plaintiff.  *See Cohen v. Chester Cnty.
Dep't of Mental Health/Intell. Disabilities Servs.*, Civ. No. 15-5285, 2016 WL 3031719, at *8 n.11
(E.D. Pa. May 25, 2016).

- Jackson "was once restrained by a staffer named 'Eric'" (*id.* ¶ 56).

Even if these alleged violations are sufficient to support a Medicaid Act claim, they do not support Jackson's claim for relief.   Though the Eleventh Amendment to the United States Constitution "generally bars suits against states in federal court without their consent," "[a] plaintiff can avoid that bar by naming a state official in a suit for prospective declaratory or injunctive relief to prevent a continuing violation of federal law." *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 139 n.25 (3d Cir. 2024) (citations omitted).   Jackson's claim for relief misses both elements—prospective, injunctive relief and a continuing violation of federal law.

Jackson's allegations of physical confrontations vaguely describe only two isolated, past incidents—not the ongoing violation of federal law that is necessary to assert a § 1983 claim.   In fact, none of the above allegations, even when viewed in a light most favorable to Jackson, plausibly implies that Jackson's home and community-based settings continue to deprive him of his freedom from coercion and restraint.   *See Fehr v. Callahan*, Civ. No. 21-11146, 2023 WL 3180314, at *3 (D.N.J. Apr. 29, 2023) ("That Plaintiff suffers some ongoing consequences from those completed violations . . . does not change the fact that the violations of federal law alleged in this case were completed prior to the filing of the amended complaint.").   These incidents are past injuries that cannot be remedied with prospective, injunctive relief.   *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (holding that "an injunction to cure past injuries . . . cannot be fairly characterized as prospective"); *Jackson*, 2023 WL 4627815, at *5 (noting that state officials may be sued in their official capacities for prospective, injunctive relief (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996))).

As to ***individual initiative, autonomy, and independence in making life choices***, Jackson alleges the following:

- "there have been threats to take away a car assigned for his use and make transportation available for Mr. Jackson only on an ad hoc basis" (ECF No. 472 at 25 (citing ECF No. 437 ¶ 41)); and

- Jackson's "ISP does not provide him with the services of a therapist" "to help him cope with anger issues," a "speech therapist" to help with his "challenges articulating words," or "training on how to cook meals" (ECF No. 472 at 25; ECF No. 437 ¶¶ 42-44).

Again, Jackson cannot sustain his claim based on threats of service reduction, as opposed to actual service reduction. As to the services that his "ISP does not provide him," Jackson still does not allege that his ISP contemplates such services. Indeed, Jackson has amended little since the Court ruled that his alleged right to these services was "conclusory" and, even if he is entitled to receive these services, he had "not allege[d] or attempt[ed] to explain how the services" provided to him "fall short of an adequate standard." *Jackson*, 2023 WL 4627815, at *7. (*Compare* ECF No. 295 ¶ 40 ("Jackson requires the services of a therapist (to help him cope with anger issues), speech therapist, [and] training on how to cook meals . . . . These services are not being adequately provided to Mr. Jackson."), *with* ECF No. 437 ¶¶ 42-44 (summarized above).) Because Jackson did not cure the previously identified pleading deficiencies, the Court renders the same ruling here.

Finally, **individual choice concerning services and supports, and who provides them**, Jackson alleges the following:

- "Jackson's current living arrangements lack a washer and dryer" (ECF No. 437 ¶ 48); and

- "staff (among other things) routinely fail to return his calls or hang up on him, have challenges communicating with him, are rotated so frequently they have little experience meeting his particular needs, have not dealt adequately with his impulse control and medical challenges, have failed to meet his needs vis-à-vis his CPAP machine, gossip about, harass, and verbally abuse him, and fall asleep while on duty (or avoid him by staying in the bathroom or attending to their phone)" (ECF No. 472 at 25 (citing ECF No. 437 ¶¶ 51, 53-54, 57-61, 63-65, 67- 69, 71)).

Jackson's washer-dryer allegation has not meaningfully changed since the Court ruled that allegation concerns "inconveniences amount[ing] to de minimis infringements on [Jackson]'s autonomy or privacy." *Jackson*, 2023 WL 4627815, at *7.  (*Compare* 295 ¶ 43 ("Jackson's current living arrangements lack a washer and dryer."), *with* ECF No. 437 ¶ 48 ("Although Mr. Jackson's ISP indicates that he can dress independently, Mr. Jackson's current living arrangements lack a washer and dryer.").)  The Court therefore keeps with its previous ruling.

In sum, as to all of Jackson's allegations but those concerning his ISP provision of religious support and job-skills training, Jackson still does not state a viable § 1983 claim enforcing Medicaid Act rights.  Jackson's claim based on religious-support and job-skills services may proceed.  As for his other bases, to the extent that Jackson can cure the above-noted deficiencies, he may move for leave to amend the complaint.

### B.    Title II Claim (Count Two)

Seifried argues that Jackson's Title II claim is both barred by sovereign immunity and insufficiently pled.  (ECF No. 445-1 at 31-38.)

The Eleventh Amendment "imposes a jurisdictional bar against individuals" suing "a state official in his or her official capacity."  *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  "Eleventh Amendment immunity . . . is subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law."  *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

Jackson invokes only the first exception—congressional abrogation.[7]  For Title II and Fourteenth Amendment claims like Jackson's, courts analyze on a "claim-by-claim" basis whether Congress abrogated Eleventh Amendment immunity under the three-part test set forth in *United States v. Georgia*[8]: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 270, 273 n.9 (3d Cir. 2020) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

The first *Georgia* prong requires the plaintiff to state a Title II claim.  *See id.* at 273 (noting that a party must "state a claim under Title II of the ADA[] in satisfaction of the first *Georgia* requirement"); *see also Baxter v. Pennsylvania Dep't of Corr.*, 661 F. App'x 754, 756 (3d Cir. 2016) ("We do not reach the constitutional issue unless and until it is decided that the plaintiff has made out a valid Title II claim." (citing *Georgia*, 546 U.S. at 159; *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007))).  To state a claim under Title II of the ADA, the plaintiff must establish that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Geness*, 974 F.3d at 273 (citation omitted).  Seifried challenges Jackson's Title II claim only as to the third and fourth elements.  (ECF No. 445-1 at 33.)

---

[7]     As noted above, Jackson made clear that he seeks monetary damages for his Title II claim and equitable relief for his Medicaid Act and Consent Order claims.  (*See* ECF No. 463 at 15.)

[8]     546 U.S. 151, 159 (2006).  The parties agree that the *Georgia* test applies here.  (ECF No. 445-1 at 31-38; ECF No. 463 at 15-21.)

For Jackson's Title II claim, the Complaint alleges that Seifried "is excluding or threatening to exclude" Jackson "from the benefits of the services, programs, and activities of" DDD.  (ECF No. 437 ¶ 6.)  The Complaint alleges the following ways in which DDD staff actually failed to provide—as opposed to merely threatened not to provide—Jackson with services or treat him with dignity and respect:

- "[A] police report indicates that Mr. Jackson told an officer that in October 2022, a staff member of Mr. Jackson's support coordinator told him 'You don't know who I am' and pushed him; that staff member has since been relocated."  (ECF No. 437 ¶ 55.)

- "Per Mr. Jackson's [individualized service plan (ISP)], staff is supposed to watch him while he shaves to make sure he does not cut himself, but staff sometimes do not do so."  (*Id.* ¶ 60.)

- "Staff have not adequately checked to confirm that Mr. Jackson (who requires the use of a CPAP machine) continues to breathe at night."  (*Id.* ¶ 61.)

- "Per Mr. Jackson's ISP, staff are supposed to assist him with cleaning his CPAP machine to prevent harmful germs and bacteria from developing.  However, the staff do not help him clean his CPAP machine; he attempts to clean it himself, but he 'doesn't see that well.'"  (*Id.* ¶ 62.)

- "At one point, staff failed to accurately identify a bug bite on Mr. Jackson's leg." (*Id.* ¶ 63 (citing ECF No. 420).)

- "Staff are verbally abusive to Mr. Jackson (e.g., 'Shut your trap.').  Although Mr. Jackson has reported these incidents, staff continue to verbally abuse Mr. Jackson." (*Id.* ¶ 64.)

- "Staff also gossip and 'talk junk' about Mr. Jackson in front of others."  (*Id.* ¶ 65.)

- "Staff regularly suggests that Mr. Jackson seeks the affection of certain staff members (which is untrue) and get upset when Mr. Jackson engages in conversations with others when out in the community.  These actions on the part of staff are hurtful to Mr. Jackson and cause him to suffer from increased stress." (*Id.* ¶ 66.)

- "Staff often fall asleep while on duty.  Although Mr. Jackson has reported these incidents, staff continue to fall asleep while on duty.  As Mr. Jackson has stated, while they are sleeping, 'anything could happen; my heart could stop.'"  (*Id.* ¶ 67; *see also* Compl. Ex. C.)

- "At other times, staff stay in the bathroom 'for hours at a time,' per Mr. Jackson, rather than staffing him as they should." (ECF No. 437 ¶ 68.)

- "Staff sometimes attend to their phone rather than Mr. Jackson." (*Id.* ¶ 69; *see also* Compl. Ex. D.)

- "Staff often interfere with Mr. Jackson watching television." (ECF No. 437 ¶ 71.)

As "a necessary first step," the Court must identify DDD's "services, programs, or activities" at issue in Jackson's Title II claim. *See Geness*, 974 F.3d at 275 ("Identifying AOPC's 'services, programs, or activities' at the foundation of Geness's Title II claim is a necessary first step to determining whether his claim is cognizable."). "[T]he phrase 'service, program, or activity' under Title II . . . is 'extremely broad in scope and includes anything a public entity does.'" *Id.* (quoting *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019)).

The only "services, programs, or activities" that Jackson identifies are DDD staff's (1) monitoring him while he shaves and (2) assisting him with cleaning his CPAP machine. (*See* ECF No. 437 ¶¶ 60 (shaving allegation), 62 (CPAP allegation).) The Court finds—and Seifried does not appear to contest—that those are in fact "services, programs, or activities" of DDD. The remaining allegations, when viewed in a light most favorable to Jackson, perhaps fall within the "subjected to discrimination" phrase in Title II—"a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." *Haberle v. Troxell*, 885 F.3d 170, 180 (3d Cir. 2018) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007)). All told, these allegations fall within the ambit of the third Title II element.

The Court next analyzes the fourth element—Jackson's theory of causation. Jackson alleges that because of his intellectual disabilities and psychiatric conditions, he lacks impulse control, "which can cause him to seem annoying to others." (ECF No. 463 at 17 (citing ECF No. 437 ¶ 91).) For instance, Jackson "repeatedly contacts DDD offices to complain about his

13

treatment (so often that they recognize his voice), frequently changes his support coordinator, and has a difficult relationship with the staff assigned to provide him services"—all of which, though perhaps "annoying," are manifestations of Jackson's disabilities.  (*Id.* (quoting ECF No. 437 ¶¶ 88-90).)  But because of their "annoying" nature, Jackson's complaints about serious issues with services for his intellectual disabilities are not taken seriously by DDD staff, who instead allegedly "disparage him in front of others," "are verbally abusive toward him," "have pushed him," or just "leav[e] him alone."  (ECF No. 437 ¶¶ 72-73, 92.)

The Court finds that under the ADA's less demanding but-for standard, Jackson sufficiently alleges a causal connection between his psychiatric disabilities and DDD's provision of inadequate services.  *See Furgess*, 933 F.3d at 291 n.25 ("[T]he ADA only requires but-for causation." (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013))).

Seifried's contrary argument is unpersuasive at this stage.  Seifried cites *Daley v. Koch*[9] for the proposition that "poor impulse control" is not a qualifying disability under Title II.  (ECF No. 472 at 17.)  But *Daley* addressed whether a police department, in rejecting the plaintiff's employment application because of his "poor judgment, irresponsible behavior and poor impulse control," ***regarded*** the plaintiff as having impairments qualifying as handicaps under the Rehabilitation Act.  892 F.2d at 214-15.  The court held that the police department had not so regarded, because the plaintiff's traits were not impairments qualifying as handicaps under the Rehabilitation Act.  *Id.* at 215.  And the *Daley* plaintiff, unlike Jackson, "was not diagnosed as having any particular psychological disease or disorder" and "demonstrated no 'undue anxiety, thought disorder or underlying psychosis.'"  *Id.* at 214.  That distinction is important, as Jackson

---

[9]      892 F.2d 212, 214 (2d Cir. 1989).

asserts that his diagnosed psychiatric disabilities caused his poor impulse control, which annoyed DDD staff such that they deprived him of "services, programs, or activities."[10]

The Court therefore finds that Jackson states a Title II claim and satisfies the first *Georgia* prong.

The second *Georgia* prong requires the Court to analyze to what extent the alleged misconduct also violated the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment Due Process Clause has a procedural and substantive component. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Jackson asserts violations of both components. (ECF No. 463 at 20.)

A non-legislative[11] substantive due process claim has two elements: (1) "the particular interest at issue is protected by the substantive due process clause," and (2) "the government's deprivation of that protected interest shocks the conscience." *Chainey v. St.*, 523 F.3d 200, 219 (3d Cir. 2008); *see Affinity Healthcare Grp. Voorhees, LLC v. Twp. of Voorhees*, Civ. No. 22-2769, 2024 WL 195471, at *6 n.23 (3d Cir. Jan. 18, 2024) (noting that "'only the most egregious

_____

[10]    To pursue monetary damages under the ADA, as Jackson does here, a plaintiff "must also sufficiently allege that the public entity intentionally discriminated against him or her." *Geness*, 974 F.3d at 274 n.11 (citing *Haberle*, 885 F.3d at 181). Sufficiently alleging intentional discrimination requires the plaintiff to "allege at least 'deliberate indifference,' which requires '(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" *Id.* (quoting *Haberle*, 885 F.3d at 181). Viewing the allegations in a light most favorable to Jackson, and minding that Seifried makes no contrary argument, the Court infers that DDD staff had the knowledge necessary for Jackson to show deliberate indifference at this stage.

[11]    Substantive due process can relate to legislative action or non-legislative action. *See Connection Training Servs. v. City of Philadelphia*, 358 F. App'x 315, 319 (3d Cir. 2009) (explaining the difference). Jackson's claim concerns non-legislative action.

official conduct' shocks the conscience" (quoting *United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399 (3d Cir. 2003))).  Whether a property interest is protected by the concept of substantive due process "depends on whether that interest is 'fundamental' under the United States Constitution."  *Wilson v. Altman*, 807 F. App'x 172, 176 (3d Cir. 2020) (quoting *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000)).  So far, the only protected property interest that the United States Court of Appeals for the Third Circuit has recognized as fundamental involved ownership of real property.  *Id.* (citing *Nicholas*, 227 F.3d at 141); *see also Gelormini v. City of Philadelphia*, Civ. No. 23-4006, 2024 WL 1640985, at *2 (E.D. Pa. Apr. 16, 2024) (same).

Jackson asserts a fundamental property interest in the "right to continue to receive the home and community-based care for his intellectual disabilities and medical needs that is essential for his continued wellbeing under 42 U.S.C. § 1396n(c)(2)."  (ECF No. 463 at 20.)  This right to Medicaid benefits, of course, does not involve real property.  And Jackson does not cite authority stating that for substantive due process purposes, his asserted interest in continuing to receive Medicaid benefits is fundamental under the United States Constitution.  The Court therefore finds that Jackson does not assert a substantive due process right.

To state a claim for deprivation of procedural due process, a plaintiff must demonstrate that (1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Jackson alleges that he was deprived of due process by DDD staff's "fail[ing] to write up his incident reports" and "routinely hanging up on him."  (ECF No. 437 ¶¶ 51, 53.)  From these

allegations—which, again, the Court views in a light most favorable to Jackson—the Court infers that DDD staff's alleged disregard of Jackson's complaints deprived him of his ISP services.  *See Odi v. Alexander*, Civ. No. 15-4903, 2018 WL 1071928, at *6 (E.D. Pa. Feb. 27, 2018) (recognizing the procedural due process property interest in Medicaid benefits).

Seifried did not address whether Jackson's asserted property interest is actionable under the Fourteenth Amendment, or whether the procedures available to Jackson provided due process of law.  (*See* ECF No. 472 at 18.)  So at this stage, the Court assumes that Jackson's asserted interest is actionable, without prejudice to Seifried's right to argue otherwise later.   In consequence, the second *Georgia* prong is satisfied, and the Court need not consider the third *Georgia* prong.  *See Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 410 (M.D. Pa. 2020).

Therefore, Jackson's Title II claim against Seifried may proceed.

### C.    Consent Order Claim (Count Three)

Finally, Seifried argues that Jackson does not state a viable breach of the Consent Order, because "DDD has not actually reduced any services for" Jackson.  (ECF No. 445-1 at 29.)  In ruling that Jackson's last complaint was deficient, the Court found that Jackson had "not refer[red] to his Service Plan in connection with any of his claims"; "d[id] not list any specific support services from his Service Plan that are no longer provided to him" or "assert that [Seifried] arbitrarily changed his Service Plan"; and did not show that his "access to the agreed-upon services . . . [was] *in fact* reduced or revoked." *Jackson*, 2023 WL 4627815, at *10.  Since then—as detailed above—Jackson made curative amendments such that he now sufficiently alleges that DDD staff actually deprived him of certain ISP services.  Therefore, Jackson's Consent Order claim may proceed.

IV.   **CONCLUSION**

For the reasons set forth above, and other good cause shown, Seifried's motion to dismiss

Jackson's Complaint is **DENIED**.  An appropriate Order follows.

Dated: April 30 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

18